# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LAURA MEDRANO and MICHAEL MCQUEARY, on Behalf of Themselves and on Behalf of All Others Similarly Situated, | § § § § § | |
| Plaintiffs, | § § | NO. 20-1245 C |
| V. | § § | |
| THE UNITED STATES OF AMERICA, | § § § | |
| Defendant. | § | |

## PLAINTIFFS' ORIGINAL COLLECTIVE ACTION AND CLASS ACTION COMPLAINT

1. This lawsuit is brought by the Named Plaintiffs, Laura Medrano and Michael McQueary, and the Opt-In Plaintiffs Lucas Meyer, Ryan Howell, Marlen Rodriguez, Marquis Mosely, Geoffrey McCreary, Matthew Danzey, Demarcus Taylor, Deon Scott, Juan Flores, Jerry Motley, Eva Garciatadeo, Jarred Chandler, Christopher Palomares, Jasara Acosta, John Sida, and Jason McDonald (collectively the "Plaintiffs") on behalf of themselves and all others similarly situated against the Defendant United States of America ("Defendant").

2. The Plaintiffs and proposed Class Members are current and former employees of the United States Government employed at the U.S. Department of Justice, Bureau of Prisons. The Plaintiffs and Class Members worked across the country and were systemically denied the pay that they were entitled under the Fair Labor Standards Act and the Federal Employees Pay Act. This case challenges Defendant's long standing policy of failing to properly compensate its non-exempt correctional and detention officers for all hours that they work. Specifically, Defendant only paid the Plaintiffs and the Class Members for the time they were scheduled to work instead of the time they *actually* performed work for Defendant.

1

3. Although Plaintiffs and the Class Members often worked in excess of eight hours in one day and 40 hours per week, they were not paid all earned overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Plaintiffs bring this claim as a collective action pursuant section 216(b) of the FLSA.

4. Plaintiffs also bring a class action claim under Rule 23 of the Federal Rules of Civil Procedure for Defendant's failure to pay Plaintiffs and the Class Members all earned night shift premiums in violation of the Federal Employees Pay Act ("FEPA"), 5 U.S.C. § 5545.

## SUBJECT MATTER JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's claims under the Tucker Act, 28 U.S.C. § 1491(a)(1). *Abbey v U.S.*, 745 F.3d 1363, 1369 (Fed. Cir. 2014).

6. Venue is proper in this judicial district. *Id*.

## PARTIES AND PERSONAL JURISDICTION

7. Plaintiff Laura Medrano is an individual residing in Adelanto, California. Plaintiff has worked for Defendant as a correctional officer at the <u>Federal Correctional Institution in Victorville, California</u>. Plaintiff Medrano has been employed by Defendant since 2016. Her written consent to this action is attached hereto as Exhibit "1."

8. Plaintiff Michael McQueary is an individual residing in Victorville, California. Plaintiff has worked for Defendant as a correctional officer at the <u>Federal Correctional Institution in Victorville, California</u>. Plaintiff McQueary has been employed by Defendant since 2000. His written consent to this action is attached hereto as Exhibit "2."

9. Opt-In Plaintiff Demarcus Taylor is an individual residing in Douglasville, Georgia. Plaintiff worked for Defendant as a correctional officer at the <u>Federal Correctional

Institution in Yazoo City Low, Mississippi. Said Plaintiff was employed by Defendant from February 2020 to June 2020. His written consent to this action is attached hereto as Exhibit "3."

10. Opt-In Plaintiff Deon Scott is an individual residing in Memphis, Tennessee. Plaintiff worked for Defendant as a correctional officer at the Federal Correctional Institution in Memphis, Tennessee. Said Plaintiff was employed by Defendant from May 2016 to May 2018. His written consent to this action is attached hereto as Exhibit "4."

11. Opt-In Plaintiff Marlen Rodriguez is an individual residing in Wildwood, Florida. Plaintiff has worked for Defendant as a correctional officer at the Federal Correctional Complex, Coleman in Florida. Said Plaintiff has been employed by Defendant since 2019. Her written consent to this action is attached hereto as Exhibit "5."

12. Opt-In Plaintiff Christopher Palomares is an individual residing in Clermont, Florida. Plaintiff worked for Defendant as a correctional officer at the Federal Correctional Complex, Coleman in Florida. Said Plaintiff was employed by Defendant from March 2008 to September 2018. His written consent to this action is attached hereto as Exhibit "6."

13. Opt-In Plaintiff Jerry Motley, Jr. is an individual residing in Prattville, Alabama. Plaintiff worked for Defendant as a correctional officer at the Federal Correctional Institution in Oakdale, Louisiana and the Federal Prison Camp in Montgomery, Alabama. Said Plaintiff has been employed by Defendant since December 2013. His written consent to this action is attached hereto as Exhibit "7."

14. Opt-In Plaintiff Marquis Mosley is an individual residing in Huntsville, Alabama. Plaintiff worked for Defendant as a correctional officer at the Federal Correctional Institution in Aliceville, Alabama. Said Plaintiff was employed by Defendant from June 2016 to May 2018. His written consent to this action is attached hereto as Exhibit "8."

15. Opt-In Plaintiff Lucas Meyer is an individual residing in Bailey, Colorado. Plaintiff worked for Defendant as a correctional officer at the <u>Federal Correctional Institution, Englewood in Colorado</u>. Said Plaintiff was employed by Defendant from September 2016 to July 2020. His written consent to this action is attached hereto as Exhibit "9."

16. Opt-In Plaintiff Jason McDonald is an individual residing in Edmond, Oklahoma. Plaintiff worked for Defendant as a correctional officer at the <u>Federal Transfer Center in Oklahoma City, Oklahoma</u>. Said Plaintiff was employed by Defendant from July 2014 to April 2020. His written consent to this action is attached hereto as Exhibit "10."

17. Opt-In Plaintiff Geoffrey McCreary is an individual residing in Washington, Pennsylvania. Plaintiff worked for Defendant as a correctional officer at the <u>Federal Correctional Institution, Hazelton in West Virginia</u> and the Federal <u>Correctional Institution in Cumberland, Maryland</u>. Said Plaintiff was employed by Defendant from February 2014 to August 2019. His written consent to this action is attached hereto as Exhibit "11."

18. Opt-In Plaintiff Ryan Howell is an individual residing in Ocala, Florida. Plaintiff has worked for Defendant as a correctional officer at the <u>Federal Correctional Institution, Hazelton in West Virginia</u> and at the <u>Federal Correctional Complex, Coleman in Florida</u>. Said Plaintiff has been employed by Defendant since December 2013. His written consent to this action is attached hereto as Exhibit "12."

19. Opt-In Plaintiff Eva Garciatadeo is an individual residing in Los Angeles, California. Plaintiff worked for Defendant as a correctional officer at the <u>United States Penitentiary in Atwater, California</u>. Said Plaintiff was employed by Defendant from June 2018 to June 2019. Her written consent to this action is attached hereto as Exhibit "13."

20. Opt-In Plaintiff Matthew Danzey is an individual residing in Milford, Pennsylvania. Plaintiff worked for Defendant as a correctional officer at the <u>Federal Correctional Institution in Otisville, New York</u> and the <u>Metropolitan Correctional Center in Manhattan, New York</u>. Said Plaintiff has been employed by Defendant since 2009. His written consent to this action is attached hereto as Exhibit "14."

21. Opt-In Plaintiff John Sida is an individual residing in San Antonio, Texas. Plaintiff worked for Defendant as a correctional officer at the <u>Federal Correctional Institute in Three Rivers, Texas</u>. Said Plaintiff was employed by Defendant from August 2018 to January 2020. His written consent to this action is attached hereto as Exhibit "15."

22. Opt-In Plaintiff Jasara Acosta is an individual residing in Conway, South Carolina. Plaintiff worked for Defendant as a correctional officer at the <u>Federal Correctional Institute in Fairton, New Jersey</u>. Said Plaintiff was employed by Defendant from August 2014 to September 2018. His written consent to this action is attached hereto as Exhibit "16."

23. Opt-In Plaintiff Jarred Chandler is an individual residing in Valrico, Florida. Plaintiff worked for Defendant as a correctional officer at the <u>United States Penitentiary, Coleman in Wildwood, Florida</u>. Said Plaintiff was employed by Defendant from November 2012 to January 2018. His written consent to this action is attached hereto as Exhibit "17."

24. Opt-In Plaintiff Juan Flores is an individual residing in Victorville, California. Plaintiff has worked for Defendant as a correctional officer at the <u>Federal Correctional Institute in Victorville, California</u>. Said Plaintiff has been employed by Defendant since March 2013. His written consent to this action is attached hereto as Exhibit "18."

25. The FLSA Class Members are all current and former correctional officers and detention officers who worked for Defendant at any time during the three-year period prior to the

...

filing of this Complaint to the present.  Excluded from the class are any correctional officers and detention officers who worked for Defendant at the United States Penitentiary Lee near Pennington Gap, Virginia, the Federal Correctional Institution Sheridan, or the Federal Detention Center in Sheridan, Oregon.

26. The Rule 23 Class Members are all current and former correctional officers and detention officers who worked for Defendant at any time during the six-year period prior to the filing of this Complaint to the present.

27. The FLSA Class Members and the Rule 23 Class Members shall be collectively referred to as the "Class Members."

## COVERAGE

28. At all material times, Defendant has been an employer within the meaning of 3(d) of the FLSA. 29 U.S.C. § 203(d).

29. As a public agency, Defendant is an enterprise engaged in commerce or in the production of goods for commerce as defined by 29 U.S.C. § 203(s)(1)(c).

30. At all material times, Plaintiffs and the Class Members were/are employees engaged in commerce or the production of goods for commerce as required by 29 U.S.C. § 207.

31. At all material times, Plaintiff and the Class Members were not exempt from overtime under the FLSA.

## FACTS

32. The Plaintiffs and Class Members are/were non-exempt correctional officers and detention officers employed by the United States Bureau of Prisons.  They have been entitled to the rights and protections of the FLSA and FEPA, including overtime pay and night shift pay.  Unfortunately, Defendant has systematically violated the law by instituting a policy of only paying

Plaintiffs and the Class Members for their scheduled shift time while requiring the Plaintiffs and Class Members to perform work both before the start of their scheduled shifts and after the end of their scheduled shifts without pay. This policy is illegal on its face.

33.     The Plaintiffs and Class Members were required to perform significant pre-shift work that was integral and indispensable to their daily duties for Defendant. The primary job duty of the Plaintiffs and the Class Members was to manage and oversee the inmate population at the prison centers, to ensure safety at the prisons, and to maintain security at the prisons. The Plaintiffs and Class Members were responsible for the custody and discipline of inmates and detainees held at correctional and detention centers operated by Defendant. Among other duties, the Plaintiffs and Class Members searched for contraband and provided security, count, feed, and supervised detainees and inmates.

34.     Given the nature of the prisons, Defendant's facilities are secured by locked doors and metal detectors.

35.     When the Plaintiffs and Class Members arrived at the prison centers, they were first required to undergo a security screening.

36.     During the security screening, the Plaintiffs and Class Members emptied their pockets, emptied their bags, removed their shoes, removed their belts, removed their jackets, removed all metal objects, and submitted any personal items in their possession for inspection.

37.     They then walked through a metal detector and underwent a further search if any metal objects were detected.  After clearing the metal detector, the Plaintiffs and Class Members were able to gather their belongings.

38.     The Plaintiffs and Class Members then put on their clothing, including their shoes, belts, and jackets.

39. After clearing the metal detector, the Plaintiffs and Class Members then had to pass through several security doors. Defendant did not pay the Plaintiffs and Class Members for this work.

40. This security screening time lasted approximately 10-20 minutes per day and went uncompensated by Defendant.

41. However, this time should have been compensated by Defendant.

42. The security screenings were required by Defendant and the Plaintiffs and Class Members were told in advance the time they were required to be at the prison centers.

43. The security screenings were also necessary to the principal work performed by the Plaintiffs and Class Members – to provide security in the prisons and to search for contraband. The security screenings were also undertaken on Defendant's premises, were controlled and required by Defendant, and undertaken primarily for the benefit of Defendant.

44. Indeed, Defendant required the Plaintiffs and Class Members to undergo this screening for the purposes of overall safety in the prison and to prevent the officers from inadvertently or intentionally bringing contraband into the prison centers.

45. These security screenings prevented weapons and other contraband from entering the prison, and in doing so, was necessarily tied to the correctional and detention officers' work of providing security and searching for contraband. Thus, the security screening and the work of the correctional and detention officers shared the same purpose. In fact, the screening time was tied to the productive work of supervising and providing security by the officers.

46. Defendant could not have eliminated the screenings altogether without impairing the officers' ability to complete their work. If Defendant eliminated the security screening, officers could inadvertently or intentionally bring weapons or other contraband into the prison. The

8

introduction of weapons and other contraband into the prison would most certainly result in a less secure prison and would impair the officers' ability to provide security, supervise the inmates/detainees, and search for contraband.

47. Additionally, preventing weapons and other contraband from entering the prison was an essential element of the officers' job duties with the ultimate purpose to maintain a secure prison environment.

48. As noted above, Defendant did not pay for the time spent by Plaintiffs and the Class Members going through the security screening.

49. After clearing the security screening, the Plaintiffs and Class Members were required to gather their equipment before the start of their scheduled shifts. The Plaintiffs and Class Members were required to gather radios, handcuffs, pepper spray, and keys.

50. After being assigned their equipment, they were required to attend a pre-shift briefing with the correctional/detention officers they were relieving. This briefing discussed what occurred during the prior shift and an update on the current proceedings at the facility.

51. Moreover, since March 2020 and as a result of the COVID-19 Pandemic, the Plaintiffs and Class Members were required to undergo a COVID-19 screening prior to entering the facility. During the COVID-19 screening, the Plaintiffs and Class Members were required to wait in line as another employee of Defendant examined the Plaintiffs and Class Members. During the COVID-19 screening, the Plaintiffs and Class Members were asked a series of questions about their health condition, such as "Do you have a runny nose?" They were also asked as series of questions to confirm their identity, such as their name, birth year, job position, and institution.

52. Given the amount of pre-shift work they were required to perform, the Plaintiffs and Class Members were required to arrive with sufficient time before the start of their shift to

perform all of the work identified above. To perform all of the necessary pre-shift work, the Plaintiffs and Class Members were required to arrive 30-45 minutes before the start of their scheduled shifts. However, they were not paid for any of the work they performed prior to the start of their scheduled shifts.

53. The pre-shift work was compensable because the tasks were required by Defendant, performed on the premises of Defendant, and necessary for the Plaintiffs and Class Members to perform their work for Defendant. Indeed, the pre-shift work identified above was necessary to the principal work performed by the Plaintiffs and Class Members – to provide security in the prisons, to maintain the safety of the prisons, and to keep the prisons free of contraband. The pre-shift work was also controlled and required by Defendant and undertaken primarily for the benefit of Defendant.

54. The pre-shift work was also necessary to keep the prisons safe and secure – a primary duty of the Plaintiffs and Class Members. In fact, the pre-shift work was directly tied to the productive work of supervising, providing security, and ensuring safety in the prisons by the Plaintiffs and Class Members.

55. Defendant could not have eliminated the pre-shift work altogether without impairing the Plaintiffs' and Class Members' ability to complete their work. Eliminating the pre-shift work, would most certainly result in a less secure and safe prison and would impair the Plaintiffs' and Class Members' ability to provide security, ensure safety, supervise the inmates/detainees, and search for contraband.

56. After the Plaintiffs' and Class Members' scheduled shifts were over, they were still required to perform significant post-shift work that went uncompensated. At the end of their scheduled shifts, they were required to return their equipment and were required to debrief the new

correctional/detention officers who were relieving them about what transpired to during the prior shifts. They reported on any problems with inmates, whether any fights had occurred, and other events during the prior shifts.

57. The post shift work normally lasted 10-30 minutes. Again, the Plaintiffs and Class Members were not paid for this post shift work because they were only paid for the time when their shifts were scheduled to begin and end.

58. The post shift work was compensable because the tasks were required by Defendant, performed on the premises of Defendant, and necessary for the Plaintiffs and Class Members to perform their work for Defendant. Indeed, the post shift work identified above was necessary to the principal work performed by the Plaintiffs and Class Members – to provide security in the prisons, to maintain the safety of the prisons, and to keep them free of contraband. The post shift work was also controlled and required by Defendant and undertaken primarily for the benefit of Defendant.

59. The post shift work was also necessary to keep the prisons safe and secure – a primary duty of the Plaintiffs and Class Members. In fact, the post shift work was directly tied to the productive work of supervising, providing security, and ensuring safety in the prisons by the Plaintiffs and Class Members.

60. Defendant could not have eliminated the post shift work altogether without impairing the Plaintiffs' and Class Members' ability to complete their work. Eliminating the post shift work, would most certainly result in a less secure and safe prison and would impair the Plaintiffs' and Class Members' ability to provide security, ensure safety, supervise the inmates/detainees, and search for contraband.

61. The Plaintiffs and the Class Members were non-exempt employees.

62. The Plaintiffs and the Class Members were paid on an hourly rate basis.

63. When they worked more than forty hours in a workweek or 8 hours in a day, they were entitled to overtime pay.

64. The pre-shift activities identified above were not incidental activities for the Plaintiffs and Class Members, but instead, this time was integral and indispensable to their principal activity and was compensable.

65. The post shift activities identified above were not incidental activities for the Plaintiffs and Class Members, but instead, this time was integral and indispensable to their principal activity and was compensable.

66. Defendant's policy of only paying for the time the Plaintiffs and Class Members were scheduled to work instead of the time that they *actually* worked has caused significant harm to the Plaintiffs and Class Members.

67. Due to the substantial pre-shift and post shift work, the Plaintiffs and Class Members were not paid for all time worked each day and as a result, they are owed significant overtime wages.

68. Moreover, Defendant failed to pay the night shift differentials required under the law due to the same illegal policy described above. Section 5545 of the FEPA requires Defendant to pay premium pay to employees whose regularly scheduled work falls between the hours of 6 pm and 6 am. 5 U.S.C. § 5545(a).

69. Given Defendant's policy to require pre-shift and post-shift work, the Plaintiffs and Class Members were not paid the night shift premiums required by law. For example, Plaintiff Medrano was regularly scheduled to work a shift that was 6 am to 2 pm. Given that she started

performing work 30-45 minutes before 6 am (or 5:15 am – 5:30 am) she was not paid the night shift premium for the worked performed before 6 am.

70. Just like the Plaintiffs, the Class Members were also required to perform work between the hours of 6 pm and 6 am without full night shift pay.

71. Defendant's method of paying Plaintiff and the Class Members in violation of FLSA and FEPA was willful and was not based on a good faith and reasonable belief that the conduct complied with the law. Defendant knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

## **COUNT ONE: FAILURE TO PAY OVERTIME WAGES**
**(On Behalf of Plaintiffs and the FLSA Class Members)**

72. Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

73. Section 7(a) of the FLSA, 29 U.S.C. § 207(a)) provides that an employer shall pay its employees at a rate no less than time-and-a-half for all hours worked more than forty (40) hours per workweek.

74. Additionally, section 551.501 of the Code of Federal Regulations, 5 C.F.R. § 551.501, provides that federal agency employers shall compensate their employees at a rate of no less than time-and-a-half for all hours worked more than eight hours per day and/or 40 hours per workweek.

75. The Plaintiffs and Class Members are employees entitled to overtime wages.

76. None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are paid are applicable to Defendant, Plaintiffs, or the Class Members.

77. Pursuant to 29 U.S.C. § 216(b), the Plaintiffs and Class Members are entitled to recover their unpaid overtime wages and liquidated damages in an amount equal to their unpaid wages.

78. Further, pursuant to the Back Pay Act, 5 U.S.C. § 5596, the Plaintiffs and Class Members are entitled to recover interest on the back wages owed to them due to Defendant's failure to pay overtime wages.

79. The Plaintiffs and Class Members are also entitled to recover their attorneys' fees and costs pursuant to 29 U.S.C. § 216(b) and the Back Pay Act, 5 U.S.C. § 5596.

## COLLECTIVE ACTION ALLEGATIONS

80. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

81. Plaintiffs have actual knowledge that the FLSA Class Members have also been denied overtime pay for hours worked over 8 hours per day and/or forty (40) hours in a workweek because of Defendant's policy of only paying for *scheduled* hours worked and not *actual* hours worked.

82. Plaintiffs' knowledge is based on their personal work experience and through communications with other workers.

83. Other workers similarly situated to Plaintiffs throughout the United States were also not paid full overtime wages due to Defendant's illegal policy.

84. Although Defendant permitted and/or required the FLSA Class Members to work more than 8 hours per day and 40 hours per week, Defendant denied them full compensation for their overtime hours.

85. The FLSA Class Members are not exempt from receiving overtime pay.

86.     The FLSA Class Members are similar to the Plaintiffs in terms of relevant job duties, pay structure, work conditions, and the denial of overtime pay.

87.     Defendant's failure to pay overtime compensation at the rates required by the FLSA and section 551.501 results from generally applicable policies or practices and does not depend on the personal circumstances of any potential Plaintiff.

88.     The experiences of the Plaintiffs, with respect to their pay, hours, and duties are typical of the experiences of the FLSA Class Members.

89.     The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

90.     Although the exact amount of damages may vary among the FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendant that caused harm to all FLSA Class Members.

91.     As such, the class of similarly situated Plaintiffs for the FLSA Class is properly defined as follows:

> **All current and former correctional officers and detention officers who worked for Defendant at any time during the three-year period prior to the filing of this Complaint to the present. Excluded from the class are any correctional officers and detention officers who worked for Defendant at the United States Penitentiary Lee near Pennington Gap, Virginia, the Federal Correctional Institution Sheridan, or the Federal Detention Center in Sheridan, Oregon.**

### COUNT TWO: FAILURE TO PAY NIGHT SHIFT PAY
**(On Behalf of Plaintiffs and the Rule 23 Class Members)**

92.     Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

93. Section 5545 of the FEPA requires Defendant to pay premium pay to employees whose regularly scheduled work falls between the hours of 6 pm and 6 am. Specifically, section 5545(a) states as follows:

> (a)Except as provided by subsection (b) of this section, nightwork is regularly scheduled work between the hours of 6:00 p.m. and 6:00 a.m., and includes—
>
> > (1) periods of absence with pay during these hours due to holidays; and
> >
> > (2) periods of leave with pay during these hours if the periods of leave with pay during a pay period total less than 8 hours.
>
> Except as otherwise provided by subsection (c) of this section, an employee is entitled to pay for nightwork at his rate of basic pay plus premium pay amounting to 10 percent of that basic rate. This subsection and subsection (b) of this section do not modify section 5141 of title 31, or other statute authorizing additional pay for nightwork.

94. The Plaintiffs' and Rule 23 Class Members' regularly scheduled work required them to perform work between the hours of 6 pm and 6 am without full night shift premium pay.

95. In fact, Defendant regularly required Plaintiffs and the Class Members to complete work between the hours of 6 pm and 6 am as part of their regularly scheduled work.

96. During one or more workweeks during the six years prior to the filing of this lawsuit, Defendant failed to pay Plaintiffs and the Rule 23 Class Members premium payments for work performed between 6 pm and 6 am, in violation of Section 5545 of the FEPA.

97. The Plaintiffs and Rule 23 Class Members seek all unpaid wages during the hours 6 pm and 6 am, night shift premiums for work performed between the hours of 6 pm and 6 am, attorneys' fees, costs, and interest.

## COUNT THREE: DECLARATORY RELIEF
### (On Behalf of Plaintiffs and the Rule 23 Class Members)

98. Plaintiffs repeat and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

99. An actual controversy has arisen and now exists between Plaintiffs and the Rule 23 Class Members, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the Parties regarding compensation and hours of work.

100. Defendant fails to pay for all pre-shift and post-shift work performed by the Plaintiffs and Rule 23 Class Members.

101. Plaintiffs, on behalf of themselves and the Rule 23 Class Members, seek a declaration as to the Parties' respective rights and requests that the Court declare that Defendant's conduct is illegal, as alleged in this Complaint, so that future controversies may be avoided and to direct Defendant to pay the Plaintiffs and Rule 23 Class Members all unpaid wages due and premium payments due during the class period.

## RULE 23 CLASS ACTION ALLEGATIONS

102. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

103. Plaintiffs bring their claims under section 5545 of the FEPA as a Rule 23 class action on behalf of the following class:

> **All current and former correctional officers and detention officers who worked for Defendant at any time during the six-year period prior to the filing of this Complaint to the present.**

104. Although Plaintiffs do not know the precise number of members of the proposed Class, Plaintiffs believe there are more than 50,000 individuals that fit into the Class.

105. The members of the Class are so numerous that their individual joinder is impractical.

106. The identity of the members of the Class is readily discernible from Defendant's records.

107. Plaintiffs and the Rule 23 Class on one hand, and Defendant on the other, have a commonality of interest in the subject matter and remedy sought, namely night shift premiums plus interest, attorneys' fees and the cost of this lawsuit.

108. Common questions of law and fact exist to all members of the Class. These questions predominate over the questions affecting individual class members. These common legal and factual questions include, but are not limited, to the following:

   a. Whether Plaintiffs and the Rule 23 Class Members performed compensable work between the hours of 6 pm and 6 am without pay;

   b. Whether Plaintiffs and the Rule 23 Class Members were paid night shift premiums for all hours worked between the hours of 6 pm and 6 am;

   c. Whether security screening time is compensable;

   d. Whether the time spent gathering equipment is compensable;

   e. Whether the time spent in pre-shift briefings is compensable;

   f. Whether the time undergoing COVID-19 screenings is compensable.

109. These and other common questions of law and fact, which are common to the members of the Class, predominate over any individual questions affecting only individual members of the Class.

110. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs were not paid the wages in accordance with federal law just as the Rule 23 Class Members were not paid the wages in accordance with federal law, namely FEPA.

111. Plaintiffs are adequate representative of the Class because their interests do not conflict with the interests of the Class that they seek to represent. Plaintiffs have retained

competent counsel, highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

112.   The class action under federal law (FEPA) is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and the Rule 23 Class Members. The injuries suffered by each individual class member are relatively small in comparison to the burden and expense of individual prosecution of a complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class to individually redress the wrongs done to them; even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents the possibility for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex, legal and factual issues of the case. By contrast, the class action presents far fewer logistical issues and provides the benefits of a single adjudication, economy of scale and comprehensive supervision by a single court.

## **PRAYER**

113.   For these reasons, Plaintiffs pray for:

    a. Any order declaring that Defendant's failure to pay the Plaintiffs and the Class Members for their pre-shift and post-shift work violated federal law;

    b. An order certifying this case as a class action under Rule 23 and as a collective action under the FLSA;

    c. A judgment against Defendant awarding Plaintiffs and the Class Members all their unpaid wages, overtime compensation, night shift premiums, and liquidated damages;

    d. An order awarding attorneys' fees, costs, and expenses;

    e. Pre- and post-judgment interest at the highest applicable rates; and

f.  Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By:  /s/ Don J. Foty
 Don J. Foty
 Hodges & Foty, LLP
 dfoty@hftrialfirm.com
 Texas Bar No. 24050022
 4409 Montrose Blvd., Suite 200
 Houston, TX 77006
 Telephone: (713) 523-0001
 Facsimile: (713) 523-1116

And

 David W. Hodges
 Hodges & Foty, LLP
 dhodges@hftrialfirm.com
 Texas Bar No. 00796765
 4409 Montrose Blvd., Suite 200
 Houston, TX 77006
 Telephone: (713) 523-0001
 Facsimile: (713) 523-1116

Of Counsel

And

 Anthony J. Lazzaro
 The Lazzaro Law Firm, LLC
 anthony@lazzarolawfirm.com
 Ohio Bar No. 0077962
 The Heritage Building, Suite 250
 34555 Chagrin Boulevard
 Moreland Hills, Ohio 44022
 Phone:  216-696-5000
 Facsimile:  216-696-7005

Of Counsel

ATTORNEYS FOR PLAINTIFFS AND CLASS MEMBERS